IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ROBERT C. SIPES,<br><br>                        Plaintiff,<br><br>          vs.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of the Social Security<br>Administration;<br><br>                        Defendant. | **4:12CV3024**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court pursuant to the plaintiff's appeal of an adverse decision by the Social Security Administration. Filing No. 1. The plaintiff brings this action for judicial review of the final decision by the Commissioner of the Social Security Administration (SSA) denying his applications for disability benefits under Title II and supplemental security income under Title XVI of the Social Security Act. 42 U.S.C. § 401 *et seq.*, §1381 *et seq. Id.* This court has jurisdiction over these issues pursuant to 42 U.S.C. §405(g) and 42 U.S.C. 1383(c)(3). *Id.*

The plaintiff, Robert C. Sipes (Mr. Sipes), first filed applications for disability benefits and supplemental security income on November 10, 2009. Filing Nos. 11 & 12, Social Security Transcript of Proceedings, Vols. I & II (Tr.) at 155. In the applications, Mr. Sipes requested assistance as a result of disabilities that began on May 31, 2008. *Id.* The SSA denied these applications on March 12, 2010, and again upon reconsideration on June 18, 2010. *Id.* at 67, 72. The SSA held a video hearing on July 18, 2011, in which an Administrative Law Judge (ALJ) denied the applications for a third time, finding that Mr. Sipes did not qualify as disabled under sections 216(i), 223(d) and1614(a)(3)(A) of the Social Security Act. *Id.* at 10, 21. Mr. Sipes appealed, but the

SSA declined to review the decision on September 8, 2011. *Id.* at 1. In response, Mr. Sipes filed this civil action on February 6, 2012, requesting a court review of the ALJ's decision. Filing No. 1.

## BACKGROUND

Mr. Sipes is an adult resident of Lincoln, Nebraska. Filing No. 1. Mr. Sipes passed the General Educational Development (GED) tests. Tr. at 31. His prior employment includes bus/van driver, industrial truck operator, and construction worker. *Id.* at 222. On May 31, 2008, at the age of 50, Mr. Sipes left his last full-time job at Distribution, Inc. because he felt he was being "picked on." *Id.* at 31, 44, 45, 188. Mr. Sipes was abused as a child and has a long history of substance abuse problems, although he has been sober for quite some time. *Id.* at 20, 376, 377, 386, 506. He also has a family history of mental health issues. *Id.* at 377.

Mr. Sipes first reported problems with his own mental health in July of 2008. *Id.* at 375. His symptoms include severe depression, racing thoughts, difficulty sleeping, polysubstance dependence in remission, paranoia, panic attacks, crying spells, irritability, anger outbursts, anxiety, mood swings, self-consciousness, and auditory hallucinations. *Id.* at 355, 366, 376, 378, 384, 501; s*ee also* 46, 51. Mr. Sipes also experiences difficulty concentrating and persistent memory problems that negatively impact many areas of his life, although he shows relative aptitude in spatial ability and social inference. *Id.* at 43, 360, 365, 598, 888, 889. Since first reporting his mental health issues, he has been prescribed a wide variety of medications. *See id.* at 363, 371, 372. Mr. Sipes claims that the many combinations of medications prescribed by

his doctors varied in their effectiveness, but all failed to truly rid him of his symptoms (especially anxiety paranoia).  *See id.* at 363, 371, 372, 376, 386, 509, 897, 899-903.

Mr. Sipes's financial situation is very precarious.  *See id.* at 35, 368, 373.  After leaving his position at Distribution, Inc., Mr. Sipes was unable to find employment despite making many attempts and having a desire to work.  *See id.* at 368, 505, 506, 816.  Currently, he is only able to support himself financially with the help of his mother, benefits from Veterans Affairs (VA), and other government programs.  *See id.* at 34, 35, 180, 895, 897.  Mr. Sipes claims that his continuing paranoia, self-consciousness, inability to concentrate, and anxiety negatively affect his job performance and ability to work in a team.  *Id.* at 33, 51, 52, 185, 505, 506.  His work assessments from Distribution, Inc. support these claims.  *Id.* at 187-190.  In fact, the company claims that it would not hire Mr. Sipes again for these reasons.  *Id* at 190. He also asserts that these symptoms strain his relationships with friends and family and cause him to get into arguments at least once a week.  *Id.* at 46.  These statements are corroborated by reports from Mr. Sipes's therapist (Carol Volkman) and his treating psychiatrist (Dr. Julie Filips).  *See id.* at 506, 711, 820, 894, 902.

Ms. Carol Volkman is a licensed independent mental health professional (LIMHP) with a master's degree in social work. *Id.* at 50.  Ms. Volkman serves as Mr. Sipes's therapist and has interacted with him one to three times a week since June of 2009.  *Id.* at 50, 713, 899.  During every meeting, Ms. Volkman takes detailed notes describing Mr. Sipes's mental state and thought processes.  *See id.* at 597-600.  Ms. Volkman completed one comprehensive mental impairment questionnaire regarding Mr. Sipes in September of 2010, and another in July of 2011.  *See id.* 712-717, 899-903.  In the

questionnaires, Ms. Volkman filled out an evaluation of Mr. Sipes's mental aptitudes as they pertained to his capacity to perform semiskilled and unskilled labor.  *See id.*  In the first questionnaires Ms. Volkman placed Mr. Sipes's global assessment of function score (GAF) score at 45.[1]  *Id.* at 713.  This GAF score mirrored the earlier findings of medical professionals at St. Joseph Hospital's.  *Id.* at 33, 537.  In the questionnaires, Ms. Volkman noted that Mr. Sipes is "unable to meet competitive standards" in most categories required for performing unskilled and semiskilled labor and is "seriously limited" in others.  *Id.* at 715, 901.  Ms. Volkman also evaluated his functional limitations in four other critical areas.  *Id.* at 716, 902.  In her most recent report, Ms. Volkman found that Mr. Sipes suffered from "marked" limitations in his ability to engage in activities of daily living and his ability to maintain social functioning.  *Id.* at 902.  Additionally, she determined that Mr. Sipes had "extreme" deficiencies in his ability to maintain concentration, persistence, or pace.  *Id.*  Finally, Ms. Volkman found that Mr. Sipes experienced four or more "episodes of decomposition" within the last twelve months in which his mental condition deteriorated significantly, albeit temporarily.  *Id.* at 902; *see also id.* at 506, 716, 895.

In addition to his regular therapy sessions with Ms. Volkman, Mr. Sipes visited Dr. Julie Filips, his treating psychiatrist, on three occasions to discuss his mental health.

---

[1] The Global Assessment of Functioning (GAF) Scale is a rating system for reporting the clinician's judgment of the individual's overall level of functioning.  *American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders,* Fourth Edition, Text Revision 34 (4th ed., text revision 2000) (DSM-IV-TR). Global assessment functioning is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations.  *Id.* at 32.  A score of 50 or lower indicates "serious symptoms (e.g., suicidal ideation, severe obsession rituals, frequent shoplifting) or any serious impairment in social occupational or school functioning (e.g., no friends, inability to keep job)."  *Id.* at 34.  A GAF of 51 through 60 is characterized by moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).  *Id.*

*See id.* at 707.   In September of 2010, Dr. Filips completed a mental impairment questionnaire identical to the ones filled out by Ms. Volkman.  *See id.* at 707-712, 713-719, 899-903.  Dr. Filips's answers were based upon her own contact with Mr. Sipes as well as notes from Ms. Volkman's many therapy sessions with him.  *See id.* at 711.  Dr. Filips placed Mr. Sipes's GAF score at 55, which is significantly higher than the score Ms. Volkman assigned.  *Id.* at 707.   Additionally, Dr. Filips evaluated Mr. Sipes's functionality in four critical areas.  *Id.* at 710.  She found that he experienced only "mild" deficiencies in his ability to engage in daily activities as a result of his mental status.  *Id.* She also found that Mr. Sipes had "moderate" deficiencies in maintaining social functions and "marked" deficiencies in his ability to maintain concentration, persistence, or pace.  *Id.*  Moreover, Dr. Filips determined that Mr. Sipes experienced only two "episodes of decomposition" in the last twelve months.  *Id.* at 710, 711.  Dr. Filips noted that these episodes would likely cause him to be absent from work more than four days per month if he were employed.  *Id.* at 711.  Unlike Ms. Volkman, Dr. Filips found that Mr. Sipes had an "unlimited or very good aptitude" in a few categories related to his ability to perform semiskilled and unskilled labor.  *Id* at 709, 710.  However, Dr. Filips determined that Mr. Sipes was either "seriously limited," "unable to meet competitive standards," or had "no useful ability to function" in the majority of these categories.  *Id.* at 709, 710.

Dr. Linda Schmechel is a state agency psychological consultant.  *Id.* at 18, 467. In March of 2010, she completed an independent Residual Functional Capacity (RFC) assessment of Mr. Sipes.[2]  *Id.* 465, 467.  Dr. Schmechel evaluated existing psychiatric

---

[2] "RFC is defined as "the most [a claimant] can still do despite his or her 'physical or mental limitations.'" *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004) (quoting 20 C.F.R. § 404.1545(a)).

records when conducting her assessment, but she had no actual contact with Mr. Sipes. *See id.* at 482.   Dr. Schmechel also found that Mr. Sipes had only "mild" restrictions in his daily activities due to his mental condition.   *Id.* at 480.   She too determined that he had only "moderate" limitations in his ability to maintain social functioning and his ability to maintain concentration, persistence, or pace.   *Id.*   Interestingly, Dr. Schmechel did not find any evidence that Mr. Sipes experienced "episodes of decomposition."   *Id.*   She also opined that Mr. Sipes showed no "marked" deficiencies in his memory.   *Id.* at 482   Finally, Dr. Schmechel determined that Mr. Sipes was "markedly limited" in his ability to interact with the general public as well as his ability to set realistic goals and make plans independently of others, but was "not significantly limited" or only "moderately limited" in most other areas.   *Id.* at 465-466.

In addition to his numerous mental health problems, Mr. Sipes struggles with a host of physical impairments.   Mr. Sipes underwent heart valve replacement and bypass surgeries in August of 2010, as a result of moderately severe aortic stenosis.   *Id. at* 12, 778.   The operations succeeded, however, and Mr. Sipes recovered from them relatively quickly.   *Id.* at 12.   Mr. Sipes is also clinically obese, limiting his mobility and capacity to work.   *Id.* at 16.   He continues to struggle with his weight despite attending diet counseling sessions and engaging in water exercises.   *Id.* at 16, 505, 747, 765.   Mr. Sipes also claims that it is extremely difficult for him to breathe when he exerts himself. *Id.* at 47.   This may be a symptom of his chronic obstructive pulmonary disease (COPD), a condition that likely developed as a result of Mr. Sipes's former smoking habit.   *See id.* at 749.   He recently quit smoking, however.   *See id.* at 749, 898.

6

Mr. Sipes's most significant physical impairment is chronic, debilitating lower back pain and radiculopathy (numbness, weakness, etc.).  Mr. Sipes first complained to Dr. David Arunski about his back pain in 2008.  *See id.* at 437.  The worsening pain caused Dr. Arunski to suggest that Mr. Sipes receive physical therapy in January of 2010.  *Id.*  Although he attended many sessions, the physical therapy afforded only slight and temporary relief to Mr. Sipes.  *Id.* 37, 390, 393, 433-437, 747.  Despite the worsening pain and ineffectiveness of physical therapy, Dr. Glen Knops, a state agency physician, found Mr. Sipes capable of performing medium work in March of 2010.  *Id.* at 16, 461, 463.

In May of 2011, however, the use of magnetic resonance imaging (MRI) on Mr. Sipes's back revealed that he suffers from mild central canal stenosis and facet joint disease in the L3-L4 region of his spine.  *Id.* at 825.  The MRI depicted severe facet joint disease, moderate central canal stenosis, and mild nerve impingement in the L4-L5 region of his spine.  *Id.*  The MRI also showed severe facet join disease, epidural lipomatosis, and nerve impingement in the L5-S1 region of his spine.  *Id.* Despite taking pain medication, Mr. Sipes describes intense pain and weakness in his back and legs after walking more than fifty feet.  *Id.* at 38.  In addition, he attests that he can only stand still for five minutes or sit down for one hour at a time without pain and discomfort.  *Id.* at 44.  Finally, Mr. Sipes states that he can presently lift a maximum of only forty to fifty pounds. *Id.*

While Mr. Sipes is currently unable to find employment, he makes an effort to stay busy.  As mentioned above, Mr. Sipes attends multiple therapy sessions each week with Ms. Volkman.  *Id.* at 50, 713, 899.  He occasionally volunteers to drive the

train at the local children's zoo, but experiences extremely uncomfortable levels of paranoia when he does so. *Id.* at 599. Mr. Sipes works for two hours a week as van driver for the mental health clinic where he attends his therapy sessions. *Id.* at 34, 50. Ms. Volkman makes it clear that this is a "sheltered" position, however, and that in this limited role Mr. Sipes experiences significant difficulties. *Id.* at 50, 51.

Mr. Sipes lives in the basement of his mother's house. *Id.* at 34. His mother takes care of his finances. *Id.* at 180. She also cooks for him and does most of the shopping, but Mr. Sipes reported that he occasionally fixes a TV dinner for himself. *Id.* at 42, 179, 213. He is able to drive his mother to her doctor's appointments and the store, maintain his own hygiene, and do small tasks such as making his own bed. *Id.* at 42, 43. He is also capable of completing a few other tasks around the house. *Id.* at 42, 43. Mr. Sipes claims that he no longer performs strenuous chores such as mowing or removing snow. *Id.* at 48. When Mr. Sipes was able to complete these chores, he states that he could do so only with frequent breaks. *Id.* at 215. At one time, Mr. Sipes enjoyed playing pool. *Id.* at 42. At the ALJ hearing, however, Mr. Sipes reported that he had not played pool in over two years. *Id.* Mr. Sipes also plays frisbee with his dogs for an hour a day, but states he can only do this while sitting down. *Id.* at 40, 44. Finally, Mr. Sipes states that attends church every Sunday, but does not participate in any other church related activities. *Id.* at 42,43.

Steven Kuhm, a vocational expert (VE), testified at the ALJ hearing. *Id.* at 54. The ALJ presented Mr. Kuhm with a hypothetical individual. *Id.* at 56. The ALJ asked him to assume that this individual was of the same age, had the same work history, and possessed the same education level as Mr. Sipes. *Id.* The ALJ also asked Mr. Kuhm to

assume the individual could perform work within the "light exertional category."  *Id.*
Finally, the ALJ asked Mr. Kuhm to assume that the hypothetical individual had all the
same mental limitations as Mr. Sipes as determined by Dr. Schmechel, the agency
consultant.  *See id.* at 56-57, 465-466.  In response, Mr. Kuhm stated that the individual
would no longer be able to perform the work he did in the past (bus/van driver, industrial
truck operator, construction worker).  *Id.* at 57.  He opined, however, that the
hypothetical individual would be able to perform work at the light unskilled level.  *Id.* at
58.  Upon cross-examination, counsel asked Mr. Kuhm if limitations on an individual's
ability to sit or stand would affect his ability to perform in light unskilled positions.  *Id.* at
58, 59.  The VE replied that it would, as these jobs require an individual to be on his feet
for six to eight hours a day.  *Id.* at 59.  Counsel also asked Mr. Kuhm if marked
deficiencies in concentration and pace would affect the individual's ability to perform in
these positions.  *Id.*  Mr. Kuhm replied that it would, as an individual with this limitation
would not be able to stay on track and maintain work in the national economy.  *Id.*

## STANDARD OF REVIEW

When reviewing a Social Security disability benefits decision, the district court
does not act as a fact-finder or substitute its judgment for the judgment of the ALJ or the
SSA.  *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995).  Rather, the district court will
affirm the ALJ's decision to deny benefits if it is supported by substantial evidence in the
record as a whole.  *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008).  Substantial
evidence is less than a preponderance, but enough that a reasonable mind would
accept it as adequate to support a decision.  *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th
Cir. 2008).  In determining whether the evidence in the record is substantial, the court

must consider "evidence that detracts from the [ALJ's] decision as well as evidence that supports it." *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).

The SSA has promulgated a sequential process to determine whether a claimant qualifies for disability benefits. *See* 20 C.F.R. § 404.1520(a); *Cox v. Apfel*, 160 F.3d at 1203, 1206 (8th Cir. 1998). Under the SSA's regulations, the determination involves a step-by-step analysis of the claimant's current work activity, the severity of the claimant's impairments, the claimant's residual functional capacity and his or her age, education, and work experience. 20 C.F.R. § 404.1520(a); *Flanery v. Chater*, 112 F.3d 346, 349 (8th Cir. 1997). The SSA determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment—one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the SSA to prove that there are other jobs in the national economy that the claimant can perform. *Cox*, 160 F.3d at 1206.

At step three of the sequential evaluation, if the claimant is found to suffer from an impairment that is listed in the Appendix to 20 C.F.R. Part 404, Subpart P ("the listings") or is equal to such a listed impairment, the claimant will be determined disabled without consideration of age, education, or work experience. *Flanery*, 112 F.3d at 349; 20 C.F.R. § 404.1525(a). The listings specify the criteria for each

impairment that is considered presumptively disabling.  20 C.F.R. Pt. 404, Subpt. P, App. 1.

In order to be presumptively disabled by reason of a disorder of the spine, a claimant must satisfy the requirements of the criteria for the impairment set forth in section 1.04(A) of the listings:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
>
> A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 104.

To be presumptively disabled by reason of an affective disorder such as depression, a claimant must meet the criteria set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04.   The mental impairment listing consists of a set of medical findings that medically substantiate the mental disorder ("Paragraph A criteria"); a set of impairment-related limitations that show effect of the impairment effect on functions deemed essential to work ("Paragraph B criteria"), and certain additional functional limitations ("Paragraph C criteria").  20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.00(A), 12.04; *see generally Pratt v. Sullivan,* 956 F.2d 830, 834-35 & n.7&9 (8th Cir. 1992).

If a mental impairment is found under Paragraph A, the ALJ must rate the degree of functional limitation resulting from the impairment based on the extent to which the impairment interferes with the claimant's ability to function independently, appropriately, and on a sustained basis in four areas of function which are deemed essential to work.

11

*Id.*, § 404.1520a(c)(3).  These areas of activity correspond to the Paragraph B criteria.  *Id.*  Sufficient deficiencies in two or more of the categories listed in Paragraph B are enough to show the claimant is presumptively disabled due to an affective disorder.[3]  20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04(B).  If the Paragraph B criteria are not satisfied, the claimant may prove a listing-level impairment with reference to the Paragraph C criteria.[4]  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A); §§ 12.04(C)(1)-(3).  Very similar analysis is employed to determine if an individual is presumptively disabled as a result of an anxiety disorder.  *See generally* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.06.

If a claimant has a severe physical or mental impairment that does not meet the listing, the SSA will then assess RFC.  20 C.F.R. § 404.1520a(d)(3).  When determining

---

[3] Those areas are:  activities of daily living; social functioning; concentration, persistence or pace; and episodes of decomposition.  20 C.F.R. § 404.1520a(c)(3).  The degree of functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform those work-related functions.  *Id.*, §§ 404.1520a(c)(4), 404.1520a(d)(1).

For the first three areas (activities of daily living, social functioning, and concentration, persistence, or pace), the rating of limitation is based upon the following five-point scale: none, mild, moderate, marked, and extreme.  For the fourth area (deterioration or decomposition), the following four-point scale is used: none, one or two, three, four or more.  *Id.*, § 404.1520a(c)(4).  The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.  *Id.*  In other words, those degrees of limitation will satisfy the listings.  Conversely, ratings of "none" or "mild" in the first three areas and "none" in the fourth area will generally indicate that the claimant's impairment is not severe unless the evidence indicates that there is more than a minimal limitation in the claimant's ability to do basic work functions.  *Id.*, § 404.1520a(d)(1); *see also* § 404.1521(b)(1)-(6) (setting forth examples of basic work activities).

Claimants with ratings of "moderate" or "marked" in the first three areas, and "one or two" or "three" in the fourth area have neither presumptively non-severe impairments nor presumptively disabling impairments.  To determine disability in these "in-between" cases, the ratings of the degree of functional limitation will be compared to the criteria of the appropriate listed mental disorder.  *Id.*, § 404.1520a(d)(2); *see, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04 (requiring two of either "marked" restrictions in first three areas or repeated episodes in fourth area).

[4] Paragraph C of the affective disorders listing requires demonstration of "a medically documented history of a chronic affective disorder of at least two years duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication and psychosocial support," as well as one of the following: (1) repeated and extended episodes of decomposition; (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(C)(1)-(3).

a claimant's RFC, the ALJ must consider all relevant evidence, including the claimant's own description of her or his limitations, as well as medical records, and observations of treating physicians and others.  See *Pearsall v. Massanari,* 274 F.3d 1211, 1217-18 (8th Cir. 2001); *see also* 20 C.F.R. §§ 404.1545, 404.1546.

In determining RFC, the ALJ must consider the effects of the combination of both physical and mental impairments.  *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003); *Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000) (stating that the ALJ is required to consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient medical severity to be disabling); 20 C.F.R. § 404.1523.

## ALJ DECISION

The ALJ first determined that Mr. Sipes suffered from the following severe impairments:  depression, anxiety, degeneration of the lumbosacral spine, and obesity. Tr. at 12.  The ALJ concluded that Mr. Sipes's heart condition was not a "severe impairment" because he had no restrictions on his activities three months after surgery. *Id.*  The ALJ also noted that Mr. Sipes did not technically claim his cardiac problems caused any limitations in his abilities.  *Id.*  Additionally, the ALJ found no evidence that Mr. Sipes's history of substance abuse is a factor that materially contributed to his current impairments.  *Id.* at 20.

The ALJ next decided that Mr. Sipes "does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 CFR Pt. 404 Subpt. P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)."  *Id.* at 13.  The ALJ concluded that Mr.

13

Sipes's spinal stenosis did not meet the requirements of 1.04(A) because "there is no evidence on the record showing that claimant had any limitation of motion of the spine, motor loss, and sensory reflex loss." *Id.*

The ALJ also decided that Mr. Sipes's mental condition did not meet the criteria of 12.04(A) & (B)(C). *Id.* This decision was based upon four separate findings. *See Id.* at 13-14. First, the ALJ concluded that Mr. Sipes had "mild restrictions" in his activities of daily living because he engaged in activities such as driving, mowing, cleaning the house, and cooking "without limitation." *Id.* at 13. Second, the ALJ determined that Mr. Sipes had "moderate difficulties" in social functioning because there is little evidence of him acting inappropriately in a social setting and he maintained relationships with his family members. *Id.* Third, the ALJ found that Mr. Sipes had only "moderate difficulties" maintaining concentration, persistence, or pace. *Id.* at 14. The ALJ based this decision upon the determinations that Mr. Sipes is able to speak in a logical manner and that his memory is in the "borderline" range, and he "is capable of performing complex tasks such as driving, mowing the grass, cleaning, and cooking." *Id.* Finally, the ALJ concluded that Mr. Sipes did not have repeated episodes of decomposition because there is not sufficient evidence to demonstrate these episodes and the claimant "has not been hospitalized for an extended period." *Id.*

The ALJ next concluded that Mr. Sipes "has the residual function capacity [RFC] to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b)." *Id.* The ALJ based this decision largely upon the opinion of Dr. Schmechel, the state agency consultant. *Id.* at 18. The ALJ asserted that Dr. Schmechel's opinion should be given "substantial weight" because it is supported by the

"majority of the medical evidence." *Id.* The ALJ gave only "slight weight" to the opinion of Dr. Filips because she had only met with Mr. Sipes on three occasions. *Id.* at 18-19. The ALJ also suggested that there were inconsistencies in Dr. Filips's report because of the relatively high GAF score she assigned to Mr. Sipes. *Id.* at 19. In addition, the ALJ claimed that Dr. Filips's conclusion "was not supported by the longitudinal evidence" because Mr. Sipes has been able to engage in activities such as driving, volunteering at the zoo, looking for employment, and playing pool. *Id.* The ALJ also afforded "slight weight" to Ms. Volkman's evaluation because she is an LIMHP rather than a Ph.D., and some aspects of her report differed from Dr. Filips's findings. *Id.*

In addition to assessing his mental condition, the ALJ weighed Mr. Sipes's physical impairments before making this determination. *Id.* at 15-16. The ALJ afforded "partial weight" to the state agency physician's assessment that Mr. Sipes was capable of "performing a full range of medium work." *Id.* at 16. The ALJ gave only "partial weight" to this opinion because Dr. Knops failed to take into account Mr. Sipes's allegations of pain. *Id.* at 16. The ALJ opined that Mr. Sipes's ability to "care for his mother, drive her to doctor's appointments, cook her meals, and clean her house" as well as "use a snow blower and a lawn mower" demonstrated that his pain is not severe. *Id.* From these conclusions, the ALJ determined that Mr. Sipes is capable of performing jobs requiring light work despite his obesity and back pain. *Id.*

Finally, the ALJ determined that Mr. Sipes is not disabled. *Id.* at 21. The ALJ reached this decision based on its prior findings as discussed above. Because of this determination, Mr. Sipes is deemed ineligible to receive disability benefits under the SSA. *Id.* at 21, *see* 20 C.F.R. §§ 404.1520(g) & 416.920(g).

**DISCUSSION**

**A.  Treating Physician**

The court finds that the ALJ placed excessive weight upon the opinion of the state agency psychiatrist while largely disregarding the judgment of Ms. Volkman and Dr. Filips.   A treating physician or psychiatrist's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" will generally be given controlling wei*ght*.  *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005); 20 C.F.R. § 416.927(c)(2). The treating psychiatrist's opinion is given this weight because of her "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."  20 C.F.R. § 416.927(c)(2).   By contrast, "[t]he opinion of a consulting physician [psychiatrist] who examines a claimant once or not at all does not generally constitute substantial evidence."  *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998).   When weighing consultants' opinions, the ALJ must also evaluate "the degree to which these opinions consider all of the pertinent evidence in [the] claim, including opinions of treating and other examining sources."  20 C.F.R § 404.1527(d)(3).

Although Ms. Volkman's credentials as a LIMHP are well established, the ALJ correctly noted that this position does not technically qualify her to render medical opinions under  20 C.F.R. § 404.1502 and 20 C.F.R. § 404.1527(a).  Tr. at 19. Therefore, Ms. Volkman's opinion should not be evaluated as if she were a treating physician.  *Id.*   It does not immediately follow, however, that her opinion should

16

automatically be afforded only "slight weight."  *See id.* at 19.  In *Shontos v. Barnhart*, the court found that therapists and nurse practitioners are not "acceptable medical source(s)" pursuant to   20 C.F.R. § 404.1513(a) but could be recognized as other medical sources for the purposes of 20 C.F.R. § 404.1513(d)(1).  *Shontos v. Barnhart, 328 F.3d 418, 426 (8th Cir. 2003)*.  In fact, "an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source'. . . if he or she has seen the individual more often . . . and has provided better supporting evidence and better explanation for his or her opinion."  SSR 06-03P (8/9/06) at 5.

Ms. Volkman's is a master's prepared LIMHP and has a longstanding relationship with Mr. Sipes.  In addition Ms. Volkman meets with Mr. Sipes frequently and takes thorough notes detailing nearly every meeting.  These factors combined constitute substantial evidence that Ms. Volkman's opinion should be given more than "slight weight" in determining Mr. Sipes's RFC.  The relative differences between her opinion and that of Dr. Filips adds further weight to her opinion.

Dr. Filips is Mr. Sipes's only current treating psychiatrist, and her opinion should be given more weight than the agency consultant.  The ALJ erred by affording only "slight weight" to the opinion as it was not inconsistent with other evidence on record. Mr. Sipes's ability to perform the simple tasks described by the ALJ does not contradict Dr. Filips's finding that Mr. Sipes's mental condition renders him unable to meet competitive standards in the job market or unable to function in many areas essential in the workplace.  *See* Tr. at 19, 709-710.  The ALJ also described findings in Dr. Filips's report that were "internally inconsistent."  *Id.* at 19.  This court finds that these so-called

17

divergences are not so significant as to warrant discrediting the opinion.  In fact, her conclusions are not at all inconsistent.  Finally, the ALJ asserted that, because Dr. Filips only met with Mr. Sipes on three occasions, her evaluation was only given "slight weight."  *Id* at 19 (contrasted to the mere records review by the agency consultant).  Even if this infrequency of contact is taken into account, this is not grounds for dismissing Dr. Filips's opinion in this manner.  As the only physiatrist currently treating Mr. Sipes's mental health, Dr. Filips's judgment must be given more than merely "slight weight."  *See Shontos*, 328 F.3d at 425 (stating that the opinion of a psychologist who saw the patient for only two months should be given more weight than a source that had not examined the patient).  Thus, Dr. Filips's opinion should have been weighed more heavily in the ALJ's decision.

The ALJ inappropriately afforded the agency consultant's (Dr. Schmechel) opinion "substantial weight" in formulating the initial opinion.  After discrediting Dr. Filips's evaluation because she had only met with Mr. Sipes on three occasions, the ALJ placed substantial weight on the opinion of an individual who never met with him at all.  *Id.*  There is also no evidence to suggest Dr. Schmechel considered Ms. Volkman's notes on Mr. Sipes even though they represent a significant portion of the longitudinal evidence on file.  The court notes that Dr. Schmechel never considered the completed assessments of either Ms. Volkman or Dr. Filips because she drafted her opinion months before those evaluations were filed.  The court finds that Dr. Schmechel's opinion has weight only to the extent it supports the opinions of the treating health care professionals.

The ALJ afforded the judgment of a non-treating source a substantial amount of weight while essentially disregarding treating source opinions without good cause.  For the reasons discussed above, this manner of apportioning weight among medical evidence is directly contradicted by the law.  Therefore, the court finds that the ALJ erred in this matter and that this error resulted in a conclusion that is not supported by the substantial evidence on the record.

### B.  Subjective Allegations of Pain

In denying disability benefits, the ALJ attempted to discredit Mr. Sipes's subjective complaints of severe back pain.  When assessing the credibility of a claimant's subjective allegations, the ALJ must consider the claimant's prior work history; daily activities; duration, frequency and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions.  *Tate v. Apfel*, 167 F.3d 1191, 1197 (8th Cir. 1999) (applying analysis mandated by *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), to seizure complaints).  "'An ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the record as a whole.'" *Jackson v. Apfel*, 162 F.3d 533, 538 (8th Cir. 1998) (quoting *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997)).  A claimant may have disabling pain and still be able to perform some daily home activities.  *Burress v. Apfel*, 141 F.3d 875, 881 (8th Cir. 1998) ("the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work.").  Moreover, it is established that "The [ALJ] is not free to accept or reject the claimant's subjective complaints *solely* on the

basis of personal observations." *Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)*. (emphasis in original).

This court finds that ALJ erred in affording even "partial weight" the state agency physician's (Dr. Knops) opinion. Aside from "not sufficiently taking into account the claimant's allegation of pain," Dr. Knops completed his evaluation before Mr. Sipes received the MRI which revealed the extent of his back problems. *See* Tr. at 16. The MRI showed moderate to severe damage in multiple parts of his spine which can account for his progressive back pain. *See id.* at 393, 437, 825. Additionally, the ALJ places an undue emphasis on Mr. Sipes's ability to play pool, mow the lawn, and shovel snow as evidence that his back pain is not as severe as he claims. *Id.* at 15-16. The evidence in the record is consistent with progressive back pain. Mr. Sipes has not engaged in these activities for a significant period of time and could only perform them with frequent breaks when he was able to do so. The ALJ also appears to dismiss Mr. Sipes's assertion that his back pain significantly limits his ability to sit or stand for extended periods. Those complaints are supported by the objective medical evidence. Thus, the court rules that the ALJ's discrediting of Mr. Sipes's claims of severe back pain due to spinal damage and obesity are not supported by the substantial evidence on record.

### C.  Vocational Expert

The ALJ based the decision to deny benefits to Mr. Sipes largely upon a hypothetical question posed to a VE. Hypothetical questions put to a VE as part of the RFC determination must precisely set out all the claimant's impairments that are supported by the evidence. *Pickney v. Chater, 96 F.3d 294, 297 (8th Cir. 1996)*. The

hypothetical question must capture the concrete consequences of a claimant's deficiencies. *Id.* Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the ALJ's decision. *Id.* at 296. Additionally, the response of a VE to a hypothetical question based upon the opinion of a non-treating psychiatrist is generally not viewed as substantial evidence. *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000).

> The ALJ asked the following question of the VE at the SSA hearing:
>
> I'm going to give you a hypothetical and I'm going to ask you to assume an individual of the same age, educational level, and work history as the claimant [Mr. Sipes]. In addition, the person is in the light exertional category and, in addition, with regard to mental limitations has the following: this person is moderately limited, which means more than mild but less than marked in the following areas: the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to work in coordination with or in proximity to others without being distracted by them, the ability to complete a normal work day and work week without interruptions from psychologically based symptoms, and to perform at a—at a consistent pace without an unreasonable number and length of rest periods, the ability to accept instructions and respond appropriately to criticism from supervisors, and the ability to respond appropriately to changes in the work setting. In addition, this individual is markedly limited, which means less than—which means more than moderately in the ability to interact appropriately with the general public and the ability to set realistic goals or make plans independently of others. Could such an individual do the past jobs that the claimant has done?

Tr. at 56, 57. This hypothetical was based almost exclusively on the findings of Dr. Schmechel, the consulting psychiatrist. *See id.* at 465, 466. The VE responded by stating that the hypothetical individual would no longer be able to continue working at his previous level, but could be employed at the "light unskilled level." *Id.* at 58.

This court finds that the ALJ's use of the opinion of a non-treating source in place of a treating source when constructing the VE hypothetical is improper for the legal reasons discussed previously.  Additionally, on cross-examination, the VE specifically stated that a marked deficiency in the hypothetical person's ability to maintain concentration, persistence, or pace would cause him to "not be able to maintain work or stay on track and perform job tasks" resulting in him "not be[ing] able to maintain work in the national economy." *Id.* at 59.  The record fully supports marked limitations in this area.  Dr. Filips reported that Mr. Sipes suffers just such a marked deficiency in this category, and Ms. Volkman even went so far as to say that he has an extreme impairment in this regard. *Id.* at 710, 902.  In addition, the ALJ completely excluded back pain from the hypothetical.  Mr. Sipes's allegations of back pain that severely limits his ability to sit and stand are supported by the record and should not be discredited for the reasons discussed above. *Id.* at 44.  On cross-examination, the VE stated that such pain would render a person in Mr. Sipes's position unable to perform even light, unskilled labor because "most of the work is done on your feet for six hours out of an eight hour day." *Id.* at 59.  Thus, this court finds that the ALJ's determination that Mr. Sipes is capable of performing light, unskilled labor is erroneous because the ALJ's version of the VE hypothetical is not supported by substantial evidence on the record.

## CONCLUSION

It is the opinion of this court that the ALJ's decision to deny Mr. Sipes disability benefits is not supported by substantial evidence on the record as a whole.[5]  The court

---

[5] There may be enough evidence present for the court to find Mr. Sipes presumptively disabled under 12.04(A) & (B)(C) or 12.06(A) & (B)(C) and remand the ALJ's decision. This analysis is unnecessary, however, because there is overwhelming evidence that Mr. Sipes is disabled under 20 C.F.R. § 404.1520a(d)(3) based upon his actual RFC.

finds that the ALJ did not appropriately consider Mr. Sipes's physical and mental condition in the hypothetical, impairing the VE's ability to provide an accurate RFC. First, the ALJ improperly substituted an agency consultant's report for the opinions of Mr. Sipes's treating physician and therapist.  Second, the ALJ inappropriately omitted Mr. Sipes's allegations of debilitating pain in developing the question.  Finally, on cross-examination, the VE confirmed that sufficient deficiency in at least two of the factors would, indeed, render Mr. Sipes unable to work.

This court notes that notes that "[W]here the medical evidence in the record overwhelmingly supports a finding of disability, remand is unnecessary." *Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987).  The court finds there is overwhelming evidence of Mr. Sipes's mental and physical impairments to support a finding that he is unable to engage in continuous work activity.  Consequently, this court sees no need to prolong this case and further delay Mr. Sipes's receipt of benefits.

THEREFORE, IT IS ORDERED:

1. The decision of the ALJ is reversed.

2. This action is remanded to the SSA with the instruction to award benefits.

3.  A separate judgment will be entered in accordance with this Memorandum and Order.

DATED this 17th day of July, 2013.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge